We'll proceed to the first case, Coleman v. Barnhardt. Do we have counsel present? Okay, counsel for appellant. And we'll have ten minutes on each side. If you want to make a rebuttal argument, please just stop short of your full ten minutes and save some time. COLEMAN v. BARNHARDT Thank you, Your Honor. May it please the Court, the Honorable Court and counsel, I'm Rebecca Cofill. I represent Ronald Coleman, who has filed a claim for Social Security disability benefits. He's been denied, and we are here on an appeal to this Court. I'm going to focus on the issue of the need that the ALJ has to present a complete hypothetical to the vocational expert. In this case, the ALJ presented a hypothetical to the vocational expert that did not include all of Mr. Coleman's mental limitations. Specifically, those mental limitations that the ALJ has. And the ALJ presented a hypothetical to the vocational expert that did not include all of Mr. Coleman's mental limitations that were delineated in the three separate evaluations done at Behavioral Sciences. Well, you know, the ALJ, in his findings, found that Mr. Coleman suffered from an anxiety disorder and a personality disorder. Is that right? That's correct. Okay. So we don't dispute he made those clear findings. He made those clear findings. Now, what do you understand that the record shows that those mental conditions reflect in Mr. Coleman's ability to interact with others? Based on the testing that was done, and it's the only objective testing that is done regarding mental conditions, and it was done at Behavioral Sciences. It's specifically delineated in, I'm looking at the excerpts of record on page 178, 170, 180, which is the first of the evaluations done at Behavioral Sciences. And I would note, Your Honors, that they are signed by Masters of Social Work. However, they are signed off on by Dr. Rosenkranz, who is a Ph.D. psychologist. He does the supervising of those evaluations. That first evaluation included testing with an MMPI, which was a normal, it was an MMPI that was valid. They could score it. It was included a Hamilton Depression Scale, and it included a Portland malingering test, which was within normal limits, meaning that the test showed that Mr. Coleman was not malingering. That test, the MMPI, which had a code type of 8-6, said individuals with similar profiles are likely to express significant personal distress and complain of feeling tense, worried, depressed, and alienated. Their effect is likely to be blunted and or inappropriate. Their behavior is likely to be unpredictable and inappropriate. These individuals are likely to be suspicious and distrustful of others. They avoid significant emotional relationships. They are likely to be resentful of any demands made upon them by others. Does that mean, however, as a matter of law, if he had or was suffering from multiple personality disorder and anxiety disorder, that as a matter of law, under all circumstances, he would be considered disabled? No. And in the first place, he wasn't suffering. He was suffering a personality disorder, not a multiple personality disorder. Personality disorders on... But which personality disorder? There are a number of them. There are personality disorder, borderline personality disorder. There must be at least one or some that they identify, because if they did not, then the question would be, which one has caused the disability? They discuss the DSM-IV-TR. They do, without citing it specifically, the personality disorders that they found, at least on the first evaluation, were not otherwise specified. It had antisocial and paranoid features. And that was likewise in the second evaluation at behavioral sciences, which is 262 to 265. And on the final evaluation at behavioral sciences, again, it was paranoid with antisocial features. Antisocial features in the DSM-IV, as I understand it, it projects itself in sometimes criminal conduct, because I think, I don't have it in front of me, but it often means that they have no remorse, they have no capacity to feel for others. If that's the case, why in this case would we, if he has indeed that disorder, why would that amount to enough sufficient to establish that he's disabled? It doesn't have to... Otherwise, since it sweeps within its ambit a number of people who are or have criminal tendency or are criminals, why in this case would it make a difference? It makes a difference in this case because, as is reflected by the behavioral sciences services report, and understand that these individuals met with Mr. Coleman. This isn't, as the government suggests, just a check-off-the-box situation. They do check off boxes. But it affects the client's, this client's, ability to interact with others specifically, coworkers, with bosses. But let me see if I can pose my question more clearly. You agree that antisocial personality disorder is often found in recidivists who are criminals. That's correct. But it isn't only found in those. Well, what type of antisocial personality disorder is described in the record that would indicate otherwise, that he is not, doesn't have criminal tendencies, he's not a person without remorse, without compassion? You can see that we don't like to get ourselves in a place where we make the decision that everybody who has an antisocial personality disorder is disabled. And I would agree with Your Honor in that regard. However, Mr. Coleman doesn't suffer from just an antisocial personality disorder. He suffers from a personality disorder, as they say, not otherwise specified, with antisocial features, and with paranoid features, as well as depression. He has significant depression. That is indicated on the Hamilton Depression Scale, as they report. It's significant enough that 50, at least 50 percent, as they report, of individuals who have that much depression would have difficulty working. This is a combination of things. You do not describe what type of depression. If he has a major depressive disorder, then I certainly would find or could find, based upon the record, that that's serious. If it is a depression that is not considered a major depressive disorder, but just a dysthymic, I think, or dysthymic type of depression, that is one where someone is not rendered unable to work, to be employed in any way. And they don't define it, do they? They do not define it, Your Honor. However, for Mr. Coleman, I would ask that the Court look at all of his limitations, all of his mental problems. And this is where we have the problem in the ALJ's decision, is that he doesn't. We had the problem at the hearing when he did not pose a hypothetical to the vocational expert that included all of Mr. Coleman's limitations. He certainly could have posed a hypothetical to the ALJ that included all of them. I would note that my expanded hypothetical did include not in the best form I grant, but all of the other major. This hypothetical was, this individual would be moderately limited in the ability to interact appropriately with the general public, but could relate to supervisors and coworkers on a superficial level and could adapt to a work situation. What would you have him say? How should that have been framed? That should have been phrased, Your Honor, that you have an individual who has a marked inability to appropriately work with coworkers and supervisors, as well as a marked inability to act appropriately with the public and a marked inability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. The problem isn't that the ALJ found that it was not a marked. Yes, Your Honor. The problem is that he didn't address these limitations at all, either at the hearing or in his decision. He could address them and then distinguish them and say, I don't agree with them. He didn't address them at all, and he needs to address them. He needs to consider all of the limitations and either find that they aren't valid, give the reasons why, or find that they are and accept them. He didn't do that. You're not asking for an award of benefits at this time. You're asking for a remand so that a complete hypothetical can be given to the vocational expert? I would ask certainly for a remand so that a complete hypothetical can be given to the vocational expert. I would posit, Your Honor, that I have given a complete hypothetical, again, not in the best format, the best format being to add a limitation as you go along and find out where the jobs possibilities end, but that there are no jobs that this man could do pursuant to the hypothetical I gave. We would certainly welcome a remand, however. Well, we're over time, so I guess we should let the government proceed. Thank you, Your Honor. We'll give you one minute in rebuttal if you need it. And if Ms. Edwards wants to take an extra minute, we'll give her that as well. Okay. Good morning, Your Honor, Your Honors. Jamala Edwards representing the Commissioner. Well, at the heart of this case is credibility. It's really about what the claimant says he can do and what the record shows he actually has been doing. The claimant testified at the hearing that he could only sit for approximately 5 to 15 minutes and only stand for 10 minutes. But as the record demonstrated to us... If you put those aside from physical limitations, because the ALJ made some pretty clear findings on that aspect of his disability claim. And if you focus on the mental aspect, you don't dispute, do you, that the ALJ found specifically that he suffered from an anxiety disorder and a personality disorder unspecified? No, we don't dispute that. However, the record shows... Tell me how the hypothetical that was posed to the vocational expert adequately captures his mental... Well, as you already noted, the ALJ gave moderate limitations in social interactions. That's more than generous for what the record shows that the claimant goes to Bible study. He belongs to the Eagle Club, which he told his physician was specifically for social activity. He belongs to a pool league. He belongs to a bowling league. He belongs to a health club. He swims. These are all things that show he interacts... Well, a pool league and a bowling league... People at the gym. Well, the same way you would have to interact with someone during a job. If you're in a cubicle, you'd have to pass by them in a locker room. Does that mean that if you go to the gym and you interact with somebody there, that that means that on the job you have the same interactive abilities? Well, the jobs that were found by the vocational expert of a night security job and cleaner janitor were both fairly solitary jobs. So the ALJ took that into account when finding that the claimant could do those jobs. But the question posed, do you agree, did not specifically include the malady of anxiety and personality disorder. Well, the ALJ took those. He found those at step two but took those into account in the moderate social interactions. That's how it was interpreted to play out in his abilities to work. How do we know that the VE, the vocational expert, took those things into account? Well, we can only look at the hypothetical that the ALJ presented to the vocational expert. And I think that it and the record shows that it's more than adequate to cover what the claimant is doing in his everyday life. Where in the record is it more, is it adequate? I agree with Judge Gold that the question is, what did the vocational expert know to make the decision? Well, the vocational expert was present while the claimant testified. The claimant testified to his abilities to do different social interactions. What portion, though, of the testimony indicates that he did not suffer anxiety, personality disorder to the extent that it was disabling or did not suffer one of the multiple personality disorders? That indicates that he was not disabled. Are you saying that there's nothing in his testimony to indicate he was anxious or nothing in his testimony to indicate that he suffered from a multiple personality disorder? No, the claimant did testify to having those problems. But the medical record and plaintiff's other testimony regarding his activities of daily living and his written testimony and agency documents are inconsistent with his degree of claim of disability. Where in the records does it indicate that he doesn't suffer anxiety? Where in those records is it unequivocal? Well, I think it's rather by analogy, looking at what he is doing, rather than having a doctor say he does not suffer from anxiety. It's by looking at the record and seeing where he has not been to the doctor and has not claimed anxiety or has not gone to the doctor for a personality disorder, rather for routine items, for colds and this and that. He spoke to his doctor numerous times about his activities that he was doing and wanting to get out and wanting to be social. And these were all noted in the medical record and not necessarily in the testimony. It's with the discussions with his physicians that he talked about getting out and doing these things. There are no more questions. Thank you. Do you need a minute of rebuttal? Well, we thank counsel the case is submitted. The next case is Lanza v. Ashcroft. I think for petitioner we have Mr. Kowalski. Is that right?
judges: Gould, Paez, Silver